# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| NANCY MERIE MCCAIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No.: 4:18-cv-01558-SGC |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, Commissioner, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

The plaintiff, Nancy Merie McCain, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). McCain timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C §§ 405(g) and 1383(c)(3). For the reasons discussed below, the Commissioner's decision is due to be affirmed.

## I. Procedural History

McCain has a high school education. (Tr. at 15). She attended college but did not obtain a college degree. (*Id.*). She has previously been employed as a

---

[1] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 12).

certified nurse aide, assistant retail manager, and food server.  (*Id.* at 20).  In her

applications for DIB and SSI, McCain alleged she became disabled on June 1, 2013,

due to bipolar disorder and "manic depressive borderline personality."  (*Id.* at 147,

157).  After her claims were denied, McCain requested a hearing before an

administrative law judge ("ALJ").  (*Id.* at 11).  Following a hearing and a

supplemental hearing, the ALJ denied McCain's claims.  (*Id.* at 11-22).  McCain

was thirty years old when the ALJ issued his decision.  (*Id.* at 20, 22).  After the

Appeals Council denied review of the decision (*id.* at 1-3), that decision became the

final decision of the Commissioner, *see Frye v. Massanari*, 209 F. Supp. 2d 1246,

1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)).

Thereafter, McCain commenced this action.  (Doc. 1).

## II. <u>Statutory and Regulatory Framework</u>

To establish eligibility for disability benefits, a claimant must show "the

inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than

twelve months."  42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A), 1382c(a)(3)(A); 20

C.F.R. §§ 404.1505(a), 416.905(a).  Furthermore, a claimant must show she was

disabled between her alleged initial onset date and her date last insured.  *Mason v.

Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v.*

*Barnhart*, 405 F.3d 1209, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)). The Social Security Administration ("SSA") employs a five-step sequential analysis to determine an individual's eligibility for disability benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Id.* at §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in substantial gainful activity, the Commissioner will find the claimant is not disabled. *Id.* at §§ 404.1520(a)(4)(i) and (b), 416.920(a)(4)(i) and (b). At the first step, the ALJ determined McCain met the SSA's insured status requirements through September 30, 2017, and has not engaged in substantial gainful activity since June 1, 2013. (Tr. at 14).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the Commissioner will find the claimant is not disabled. *Id.* at §§ 404.1520(a)(4)(ii) and (c), 416.920(a)(4)(ii) and (c). At the second step, the ALJ determined McCain has the following severe impairments: polysubstance abuse, affective disorders, and anxiety-related disorders. (*Id.* at 14).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment or combination of impairments meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairment or combination of impairments meets or equals one of the Listings, the Commissioner will find the claimant is disabled. *Id.* at §§ 404.1520(a)(4)(iii) and (d), 416.920(a)(4)(iii) and (d). At the third step, the ALJ determined McCain does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings. (Tr. at 14).

If the claimant's impairment or combination of impairments does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). At the fourth step, the Commissioner will compare an assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* at §§ 404.1520(a)(4)(iv) and (e), 416.920(a)(4)(iv) and (e). If the claimant is capable of performing her past relevant work, the Commissioner will find the claimant is not disabled. *Id.* at §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Before proceeding to the fourth step, the ALJ determined McCain has the RFC to perform a full range of work at all exertional levels but with certain non-exertional

limitations.  (Tr. at 16).  At the fourth step, the ALJ determined McCain is not able to perform her past relevant work.  (*Id.* at 20).

If the claimant is unable to perform her past relevant work, the Commissioner must finally determine whether the claimant is capable of performing other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v) and (g)(1), 416.920(a)(4)(v) and (g)(1).  If the claimant is capable of performing other work, the Commissioner will find the claimant is not disabled.  *Id.*  at §§ 404.1520(a)(4)(v) and (g)(1), 416.920(a)(4)(v) and (g)(1).  If the claimant is not capable of performing other work, the Commissioner will find the claimant is disabled.  *Id.* at §§ 404.1520(a)(4)(v) and (g)(1), 416.920(a)(4)(v) and (g)(1).

At the fifth step, considering McCain's age, education, work experience, and RFC, the ALJ determined there are jobs existing in significant numbers in the national economy that McCain can perform, such as those of laundry laborer, warehouse worker/stubber, and fabrication cutter.  (Tr. at 21).  Therefore, the ALJ concluded McCain is not disabled.  (*Id.* at 22).

## III. <u>Standard of Review</u>

Review of the Commissioner's decision is limited to a determination of whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards.  *Crawford v. Comm'r of Soc. Sec.*,

363 F.3d 1155, 1158 (11th Cir. 2004). A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Rather, a district court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

# IV. Discussion

On appeal, McCain argues the ALJ failed to properly weigh the opinions of (1) Dr. Adam J. Pruett; (2) Julie Lowman, a social worker; (3) Dr. Frederic Feist; (4) Dr. Christopher S. Randolph; and (5) Dr. Alfred Jonas. (Doc. 13).[2]

" 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Id.* at 1179 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). " 'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Id.* (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). "Therefore,

---

[2] The undersigned notes that in addition to her primary arguments, McCain also contends the ALJ assigned to her case is "skeptical against claimants." (Doc. 13 at 3). The sole basis of this claim is the allegation the ALJ approved only 35% of claims that came before him in 2017, as compared to the 50% of claims approved by other ALJs in Alabama. (*Id.*). To demonstrate bias, a claimant must overcome a presumption of honesty and integrity in the ALJ by presenting evidence beyond statistics alone. *Wells v. Soc. Sec. Admin., Comm'r*, 777 F. App'x 429, 433 (11th Cir. 2019). McCain has failed to carry this burden.

when the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,' we will decline to affirm 'simply because some other rationale might have supported the ALJ's conclusion.'" *Id.* (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)).

"The ALJ may consider many factors when weighing medical evidence, including the claimant's relationship with the examining or treating physician, whether a medical opinion is well supported, whether a medical opinion is consistent with the claimant's records, and a doctor's specialization." *Wilcox v. Comm'r, Soc. Sec. Admin.*, 442 F. App'x 438, 439 (11th Cir. 2011); *see also* 20 C.F.R. §§ 404.1527(c) (identifying factors relevant to assigning weight to medical opinions), 416.927(c) (same). "An ALJ may reject any medical opinion if the evidence supports a contrary finding." *Arnold v. Soc. Sec. Admin., Comm'r*, 724 F. App'x 772, 779 (11th Cir. 2018) (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)).

However, "[a]bsent 'good cause,' an AJL is to give the medical opinions of treating physicians 'substantial or considerable weight.'" *Winschel*, 631 F.3d at 1179 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Id.*

(quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)). "With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so." *Id.* at 1179 (quoting *Phillips*, 357 F.3d at 1240-41).

An opinion as to whether a claimant is able to work is not a medical opinion, even if offered by a treating source, but rather a dispositive finding for the ALJ to make. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *Kelly v. Comm'r of Soc. Sec.*, 401 F. App'x 403, 407 (11th Cir. 2010). It is entitled to no special significance. 20 C.F.R. §§ 404.1527(d)(1) and (3), 416.927(d)(1) and (3); *Kelly*, 401 F. App'x at 407.

## A. Opinions of Dr. Pruett

McCain was hospitalized four times between May 2013 and October 2014. (Tr. at 508-44).[3] Records from each hospitalization include diagnoses of bipolar disorder. (*Id.* at 508, 514, 521, 536). McCain reported smoking Spice,[4] abusing Adderall, and using another unknown substance prior to her May 2013 admission and tested positive for amphetamines and opiates during her October 2014 admission. (*Id.* at 510, 514). Records from these hospitalizations include the additional diagnoses of amphetamine abuse with respect to the May 2013

---

[3] McCain was hospitalized again in May 2017 after threatening to commit suicide upon returning home from a reported month-long drug binge. (Tr. at 725-43).

[4] Spice is a brand of synthetic cannabinoid. *See* https://www.drugabuse.gov/publications/drugfacts/synthetic-cannabinoids-k2spice (last visited February 18, 2020).

hospitalization and amphetamine and opiate dependence with respect to the October 2014 hospitalization. (*Id.* at 508, 514).

Dr. Pruett treated McCain during all four hospitalizations, each of which lasted approximately one week. (*Id.* at 508-44). In the discharge summary for McCain's October 2014 hospitalization, Dr. Pruett stated, "[McCain] continues to apply for disability in spite of being well stabilized. The patient has severe symptoms of bipolar disorder in my opinion, preclud[ing] her from doing work and I support her applying for disability and have filled out paperwork in [] support." (*Id.* at 508). The paperwork to which Dr. Pruett referred was a form mental RFC assessment on which he indicated McCain has marked limitations in the areas of understanding and memory and sustained concentration and persistence. (*Id.* at 586).

The ALJ assigned little weight to Dr. Pruett's opinions McCain is not able to work and has marked limitations in the areas of understanding and memory and sustained concentration and persistence on the grounds (1) the opinions are not consistent with Dr. Pruett's contemporaneous treatment records or other evidence of record and (2) whether McCain is disabled is an issue reserved to the Commissioner. (*Id.* at 19-20). These grounds constitute good cause for discounting Dr. Pruett's opinions. *See Kelly*, 401 F. App'x at 407-08 (holding ALJ did not err in discounting treating physician's opinion because that opinion was not supported by other

evidence of record); *Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 741-43 (11th Cir. 2011) (holding ALJ did not err in discounting opinions of treating and examining physicians because those opinions were not supported by the physicians' own clinical findings); *Heppell-Libsansky v. Comm'r of Soc. Sec.*, 170 F. App'x 693, 698 (11th Cir. 2006) (holding ALJ did not err by declining to accord controlling weight to treating physician's statement he doubted claimant would ever be able to return to gainful employment because such statement is a dispositive finding left to ALJ, not a medical opinion).

Moreover, substantial evidence supports the ALJ's finding Dr. Pruett's opinions are not consistent with his contemporaneous treatment records. At the same time he offered opinions regarding McCain's inability to work and functional limitations, Dr. Pruett noted in the discharge summary for McCain's October 2014 hospitalization that McCain had "improved dramatically" during the course of her admission, demonstrating better concentration, more logical thoughts, and increased insight into a pattern whereby she ceases taking her medication and then begins using drugs and becoming more manic. (Tr. at 508). Additionally, it is difficult to reconcile Dr. Pruett's assertion McCain is not able to work and has marked limitations in certain areas of mental functioning with his statement she "continues to apply for disability *in spite of being well stabilized*." (*Id.* at 508) (emphasis added). The phrase "in spite of" is typically used to express a contrast between two

things – in this case, an individual's decision to continue pursuing disability benefits on the one hand, and that individual's achievement of mental stability on the other. In other words, Dr. Pruett's latter statement suggests that notwithstanding his avowed support for McCain's disability application, he may have harbored some doubt as to its necessity.

Substantial evidence also supports the ALJ's finding Dr. Pruett's opinions are not consistent with other evidence of record. As noted by the ALJ, McCain was able to read, understand, and complete forms describing her impairments, physical and mental limitations, work history, and medication regimen for purposes of her disability applications. (*Id.* at 349-64, 391-92). Moreover, records from treatment McCain received at Cherokee-Etowah-Dekalb Mental Health Center ("CED Mental Health Center"), discussed below, are not consistent with disabling functional limitations. Accordingly, the ALJ did not err by assigning little weight to Dr. Pruett's opinions.

### B. Opinions of Ms. Lowman and Dr. Feist

During the relevant period, McCain also received outpatient care at CED Mental Health Center in the form of therapy and the prescription and administration of medication. (*Id.* at 546-85, 702-05, 708-20, 745-48). Records from CED Mental Health Center reflect a diagnosis of bipolar disorder for McCain and also indicate she was being treated for the use of cannabis and amphetamines. (*Id.* at 546, 744).

In July 2017, Ms. Lowman and Dr. Feist, both of whom treated McCain at CED Mental Health Center, each completed a form titled "Mental Health Source Statement." (*Id.* at 747-48). Their answers to the questions presented on the form were identical, with one exception. Both indicated McCain could not understand, remember, or carry out very short and simple instructions; maintain attention, concentration, and/or pace for periods of at least two hours; sustain an ordinary routine without special supervision; or adjust to routine and infrequent work changes. (*Id.* at 747-48). While Ms. Lowman indicated McCain could likely interact with co-workers, Dr. Feist indicated it was not likely McCain could interact with co-workers. (*Id.* at 747-48).

The ALJ did not describe the weight afforded the opinions reflected in the "Mental Health Source Statement" forms completed by Ms. Lowman and Dr. Feist with the phrase "little weight" or the phrase "no weight." However, he did state the opinions are not entirely consistent with contemporaneous treatment records from CED Mental Health Center. (*Id.* at 20). This statement, together with the ALJ's discussion of the contents of the "Mental Health Source Statement" forms and treatment records from CED Mental Health Center (*id.* at 18), make it sufficiently clear both that the ALJ considered and rejected the opinions and why he did so. *See Brito v. Comm'r, Soc. Sec. Admin.*, 687 F. App'x 801, 804 (11th Cir. 2017) (holding that while ALJ did not assign specific weight to doctor's treatment notes or mental

status report, his discussion of the same was stated with sufficient clarity to review grounds for decision).

Moreover, the grounds articulated by the ALJ for rejecting the opinions constitute good cause for doing so, *see Flowers*, 441 F. App'x at 741-43 (holding ALJ did not err in discounting opinions of treating and examining physicians because those opinions were not supported by the physicians' own clinical findings), and they are supported by substantial evidence. With relatively few aberrations, mental status examinations performed at CED Mental Health Center between June 2013 and September 2016 found McCain's thought process to be logical, her thought content within normal limits, her attention and concentration adequate, and her energy and motivation fair. (*Id.* at 550-53, 708, 713, 718).[5] Moreover, when McCain presented to CED Mental Health Center for monthly injections of Abilify Maintena[6] between November 2015 and August 2016 she routinely reported she was doing well and denied experiencing psychiatric symptoms or medication side effects, apart from complaining of weight gain and, once, of difficulty sleeping. (*Id.* 702-05, 709-10, 712, 714-16, 719). In January 2017, McCain reported to a therapist at CED Mental Health Center that her current medication was working very well and

---

[5] Her judgement and insight were more variable during this period of time. (*See* Tr. at 550-53, 708, 713, 718).

[6] Abilify Maintena is used to treat schizophrenia and bipolar I disorder. *See* https://www.abilifymaintena.com/ (last visited February 18, 2020).

she felt stable.  (*Id.* at 746).  In May 2017, she denied psychiatric symptoms other than problems sleeping due to racing thoughts, and her therapy provider noted she had made good progress in maintaining stability.  (*Id.* at 746).  Finally, in January, March, April, and June 2016, McCain reported to CED Mental Health Center staff that she was working.  (*Id.* at 712, 715-16, 720).  The relative stability reflected in treatment records from CED Mental Health Center is at odds with the debilitating functional limitations to which Ms. Lowman and Dr. Feist opined in the "Mental Health Source Statement" forms.  Accordingly, the ALJ did not err by rejecting the opinions.[7]

### C. Opinions of Dr. Randolph

Dr. Randolph performed a consultative psychiatric examination of McCain in July 2016.  (*Id.* at 591-98).  Dr. Randolph noted McCain had applied makeup in the office lobby prior to the examination and observed "[t]his was done in a rather garish manner to one side of her face only."  (*Id.* at 594).  He further noted McCain was "markedly delusional" during the examination, "demonstrate[ed] flight of ideas with pressured, disorganized speech," and "was incapable of focusing on [the

---

[7] Moreover, because a social worker is not an "acceptable medical source," the ALJ was not required to give Ms. Lowman's opinions any special consideration.  *See Levie v. Berryhill*, 757 F. App'x 834, 836-37 (11th Cir. 2018) (noting a social work is not an "acceptable medical source") (citing 20 C.F.R. § 404.1502(a)); *Farnsworth v. Soc. Sec. Admin.*, 636 F. App'x 776, 784 (11th Cir. 2016) (holding that while ALJ was required to consider mental health counselors' opinions as "other medical sources," ALJ was not required to give their opinions controlling weight over opinions of "acceptable medical sources").

examination] and frequently derailed into psychotic ideas, such as [the] experience of seeing a bird and getting a signal from this bird who then followed her." (*Id.*).

McCain told Dr. Randolph she experiences flashbacks of sexual abuse by her grandfather. (*Id.* at 594-95). As part of the examination, Dr. Randolph asked McCain to draw a clock face. (*Id.* at 595, 597-98). McCain clustered the hour markers on one side of the clock face, added a brand name, and drew a wristband. (*Id.* at 595, 597-98). Upon completing the examination, Dr. Randolph concluded as follows:

> In light of severity of impaired reality testing and longevity of psychotic thought content as well as poor symptom management with current medications, I do not see how this young lady could ever obtain and manage the stress of a work environment that would not constitute a danger to self or others. During this [examination] she was so disconnected and distracted by psychotic thought content she could not complete the facial makeup she had started an hour and a half earlier. In light of extreme impairment in completing the easiest tasks assigned and impairment in judgment and previous history of substance abuse, I do not feel she should handle her finances.

(*Id.* at 596). Dr. Randolph also completed a form titled "Medical Source Statement of Ability To Do Work-Related Activities," indicating extreme limitations in McCain's ability to understand, remember, and carry out even simple instructions; make judgments on even simple work-related decisions; interact appropriately with the public, supervisors, and co-workers; and respond appropriately to usual work situations and changes in a routine work setting. (*Id.* at 591-93).

The ALJ assigned little weight to Dr. Randolph's opinions on the grounds

16

they are not consistent with the other medical evidence and are overly reliant on statements made by McCain. (*Id.* at 19). Because Dr. Randolph was not one of McCain's treating physicians, his opinions were not entitled to deference. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (holding opinions of one-time examiners were not entitled to deference because the examiners were not treating physicians). Moreover, the ALJ articulated appropriate reasons for assigning little weight to Dr. Randolph's opinions, and those reasons are supported by substantial evidence. *See Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 873 (11th Cir. 2011) ("Generally, the more consistent a physician's opinion is with the record as a whole, the more weight an ALJ should place on that opinion."); 20 C.F.R. §§ 404.1527(stating same proposition), 416.927(same); *cf. Crawford*, 363 F.3d at 1159 (holding ALJ properly discounted treating physician's opinion because, amongst other things, that opinion appeared to be based primarily on claimant's subjective complaints of pain).

Substantial evidence supports the ALJ's finding Dr. Randolph's opinions are not consistent with other medical evidence. Most notably, Dr. Randolph's opinions McCain has debilitating functional limitations, which he articulated in July 2016, are at odds with roughly contemporaneous treatment records from CED Mental Health Center, which as discussed above, reflect relative stability.

Substantial evidence also supports the ALJ's finding Dr. Randolph's opinions

are overly reliant on statements made by McCain. Although Dr. Randolph did appear to rely on mental status examinations he administered to McCain, he also appears to have placed great weight in McCain's report to him regarding her symptoms and medical history. Accordingly, the ALJ did not err by discounting Dr. Randolph's opinions.

### D. Opinions of Dr. Jonas

Dr. Jonas is a psychiatrist called by the ALJ to offer testimony during the supplemental hearing. He testified that as a general matter bipolar disorder is "massively over[-]diagnosed" and there is no correlation between being sexually abused as a child and later developing bipolar disorder. (Tr. at 46, 49). He also testified that as a general matter it is hard to diagnose an individual with bipolar disorder or borderline personality disorder when that person is actively abusing controlled substances. (*Id.* at 46-50). With respect to McCain, he testified that his review of her medical records did not clearly show a period of sobriety that would make it possible to attribute her symptoms to bipolar disorder and not substance abuse. (*Id.* at 46-50). The ALJ assigned significant weight to Dr. Jonas' opinions and articulated several reasons for doing so. (*Id.* at 19-20).

McCain correctly notes some courts have found ALJs to have committed reversible error by improperly crediting Dr. Jonas' opinions over those of treating and examining physicians. *See, e.g., Tobler v. Colvin*, 2014 WL 4187372, at *3-5

(N.D. Ala. Aug. 20, 2014); *Creekmore v. Colvin*, 2015 WL 4771947, at *6-7 (D.S.C. Aug. 12, 2015) (noting a troubling pattern of the Social Security Administration repeatedly utilizing Dr. Jonas to attack the opinions of claimants' treating physicians) (collecting cases); *Lydia v. Colvin*, 2016 WL 5402857, at *4 (D.S.C. Sept. 28, 2016) (noting Dr. Jonas' credibility has been called into question by numerous courts) (collecting cases); *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 268-69 (4th Cir. 2017). However, these cases do not demonstrate the ALJ's reliance on Dr. Jonas' testimony in *this* case constitutes reversible error.

McCain also argues Dr. Jonas' opinions bipolar disorder is over-diagnosed and unrelated to childhood sexual abuse are scientifically unsound. However, the validity of these general opinions is not relevant for purposes of the review conducted by the undersigned. Dr. Jonas did not question whether McCain has bipolar disorder based solely on these general opinions. He offered the opinion the record lacked evidence of a sustained period of sobriety from which it could be determined McCain's symptoms are attributable to bipolar disorder and not substance abuse. (*Id.* at 46-50); *see also Springer v. Colvin*, 31 F. Supp. 3d 1246, 1255 (E.D. Wash. 2014) (noting substance abuse affects the ability to diagnose bipolar disorder) (citing Diagnostic and Statistical Manual of Mental Disorders (4th ed.)).

Ultimately, even if the ALJ erred in crediting Dr. Jonas' opinion that it is not

clear whether McCain has bipolar disorder over the diagnoses from McCain's treating and examining medical providers of bipolar disorder included in the record, the error does not require reversal and remand to the Commissioner. A diagnosis does not establish disability. *See Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005) ("Disability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself."). "[T]he finding of any severe impairment, whether or not it results from a single impairment or a combination of impairments that together qualify as 'severe,' is enough to satisfy step two." *Hearn v. Comm'r, Soc. Sec. Admin.*, 619 F. App'x 892, 895 (11th Cir. 2015) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). Therefore, an ALJ is not required to identify every severe impairment at step two. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014). If an ALJ finds the existence of one severe impairment, the ALJ's failure to identify another impairment as severe at step two does not constitute reversible error, provided the ALJ properly notes he considered the impairment in the later steps. *Id.*; *Hearn*, 619 F. App'x at 895 (citing *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991)); *Medina v. Soc. Sec. Admin.*, 636 F. App'x 490, 492-93 (11th Cir. 2016). An ALJ's statements he evaluated whether a claimant has an "impairment or combination of impairments" that meets or medically equals a Listing and considered "all symptoms" in determining a claimant's RFC are

sufficient to demonstrate the ALJ considered all necessary evidence, including an impairment not specifically found to be severe, in reaching a conclusion a claimant is not disabled. *Tuggerson-Brown*, 572 F. App'x at 951-52 (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002)).

The ALJ in this case indicated he evaluated whether McCain has an "impairment or combination of impairments" that meets or medically equals a Listing and stated he considered "all symptoms" in determining McCain's RFC. (Tr. at 14, 16). Going beyond those statements, he also discussed evidence of McCain's alleged bipolar disorder and the alleged limitations it imposed on her functioning. (*Id.* at 14-20).[8] Ultimately, while the ALJ questioned whether McCain's alleged disabling symptoms were attributable to bipolar disorder or substance abuse, he considered those symptoms in determining McCain's RFC and concluding McCain is not disabled. The ALJ's determination of McCain's RFC and his conclusion McCain is not disabled are supported by substantial evidence, including the absence of frequent hospitalizations since October 2014 and the treatment records from CED Mental Health Center reflecting relative stability during the relevant period.

For the foregoing reasons, the ALJ did not commit reversible error by assigning significant weight to Dr. Jonas' opinions.

---

[8] The undersigned notes this discussion distinguishes the instant case from *Tobler*, where the ALJ did not discuss impairments beyond the one he found to be severe based solely on Dr. Jonas' testimony. *See Tobler*, 2014 WL 4187372, at *3-6.

## V.    **Conclusion**

Having reviewed the administrative record and considered all the arguments presented by the parties, the undersigned finds the Commissioner's decision is due to be **AFFIRMED**.  A separate order will be entered.

**DONE** this 28th day of February, 2020.


_____
STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE